## AUTOMOTIVE COMPANY AND ANOTHER v. NATIONAL FIRE INSURANCE COMPANY OF HARTFORD.[1]

January 30, 1925.

No. 24,327.

**Judgment notwithstanding denied.**

1. The evidence justified a finding that the automobile, insured against fire loss by defendant, was damaged by an accidental fire, hence defendant cannot have judgment notwithstanding the verdict.

**Negligence of servant in not putting out fire in automobile.**

2. Whether plaintiff's servant was culpably negligent in not extinguishing the fire after the discovery thereof was for the jury, and the evidence warranted an instruction that in passing on the question of such negligence the jury might consider the dangers connected with the attempt to put out the fire due to its proximity to the gasolene tank.

**Evidence of expert mechanic admissible.**

3. Over the objection that no foundation had been laid, it was not error to permit an automobile mechanic of several years' experience to testify that fire may start from the brake drums, that such fire is very hot, and might explode the gasolene in the tank.

**Verdict sustained.**

4. The verdict was not excessive.

[1]Reported in 202 N. W. 32.

Action in the district court for St. Louis county to recover $925. The case was tried before Freeman, J., and a jury which returned a verdict in favor of plaintiffs. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*George H. Spear*, for appellant.

*Austin, Austin* and *Charles T. Wangensteen*, for respondents.

HOLT, J.

Fire destroyed an automobile owned by the plaintiff, the Automotive Company. It was insured by defendant, the policy containing a clause making the loss payable to the plaintiff bank, a mortgagee. In this action upon the policy plaintiffs had a verdict for the full amount thereof. Defendant appeals from the order denying its motion in the alternative for judgment non obstante or for a new trial.

Defendant assigns error upon the denial of its motion for judgment notwithstanding the verdict. But neither in the brief nor upon the oral argument do we find any basis suggested for such a disposition of the case. The car while being driven by George Thomas, an employe of the owner, caught fire evidently from friction of a brake. There is no claim that this was other than accidental, or that the policy does not cover the resulting loss. The sole contention is that, when discovered, the fire could have been put out with small damage to the car. Some damage, at least to the rear seat cushion, is conceded. Hence defendant was not entitled to judgment.

The substantial question centers upon the claim that the fire when discovered could have been extinguished with small loss if the driver had made proper effort and availed himself of the help tendered. This question also involves a feature of the court's charge and the amount of the verdict. The circumstances of the fire are substantially these:

The Automotive Company was in the automobile business at Chisholm. On October 17, 1922, a cold and windy day, Thomas was directed by his employer to drive the insured car, an Oakland tour-

ing car, to Sturgeon lake, about 21 miles north of Chisholm. He started around 5 o'clock in the afternoon. When about 12 miles out, and on the top of a hill, he discovered the car to be on fire, a blaze coming from the brake drum of the rear right wheel. He tried to scrape up some dirt or sand from the road and was throwing this on the fire as two men, Barrett and Holm, came up behind. The latter drove past and stopped 150 feet in front and walked back to the burning car. Barrett alone was a witness, and testified that when he came back there was a fire in the rear cushion only; that he told Thomas that if they helped they could put out the fire; that Thomas responded "let her go"; that thereupon Barrett and his companion lost interest in the fire, and merely helped Thomas to move the car forward and to one side so that other vehicles might safely pass, this being done by taking hold of the front wheels and forward part of the car. Barrett admits that he had in mind the danger from explosion of the gasolene tank in the rear; that the brake drum fire might cause such explosion; that they avoided going to the rear for that reason; that there was no water to be had, and that the road was hard and no quantity of gravel available to put out the fire with. Thomas, on the other hand, denies having said "let her go"; that he was afraid the gasolene tank would explode and endanger his life and said to the men "let us go", meaning to get out of peril. He also testified that his efforts to extinguish the brake drum fire with the gravel were unsuccessful; that it was still burning when the blaze appeared in the rear seat between the seat cushion and the back of the seat, which spread rapidly to the top; that there was no water, the ground was frozen, and he had no spade, or any means to get gravel or dirt to extinguish the fire with.

It is true that under this policy no recovery can be had for the loss which the reasonable efforts of Thomas could have prevented. Even in the absence of such provision in the policy, gross negligence in failing to put out a fire defeats recovery. Chandler v. Fire Ins. Co. 3 Cush. (Mass.) 328. In Todd v. Insurance Co. 230 Mass. 595, 120 N. E. 142, the court states: "Mere negligence * * * of the insured does not prevent recovery on a policy of insurance. One of

the objects of insurance is to protect the insured from loss due to carelessness * * *. On the other hand the insurer is not liable for a fraudulent loss due to the intentional destruction of property by the insured, or to such reckless and inexcusable negligence as tends to show a fraudulent purpose or design." Phoenix Ins. Co. v. Mills, 77 Ill. App. 546, and Fleisch v. Ins. Co. 58 Mo. App. 596, cited by defendant, are to the same effect. In the instant case no written request was made to the court to cover in the charge the claim of defendant that Thomas' refusal of Barrett's offer to put out the fire caused the loss but, at the close of the charge, the court was asked to instruct the jury on that point. It is not to be looked for that when a judge is thus unexpectedly called upon to give an instruction it will be given with the most perfect accuracy and choicest language. The request was complied with in this wise:

"Of course it was the duty of the plaintiff's driver not only to use due care himself or reasonable care in putting out the fire, but also avail himself of the help offered by anyone else, and if he failed without just cause or reasonable cause to avail himself of that help, of course, that would be a ground of negligence also. In determining the question whether he was negligent or not you will have to consider the danger to his own life or the life of anyone else in so assisting, and of course, if it comes to a question of whether property ought to be saved or life saved, the scale should be in favor of the saving of life."

We do not understand that any criticism is made as to the first sentence, nor as to the law embodied in the last, for it is too favorable to defendant in the inference that mere negligence might defeat a recovery. But it is claimed that the evidence does not justify any apprehension of danger to life, hence the last sentence quoted was inapplicable and misleading. We cannot concur in this view. Barrett himself admitted that from the fire at the brake drum heat might be sufficient to explode the nearby gasolene tank, and that he had in mind such danger when they moved the car out of the road, and for that reason took hold of the front part only. But, that testimony aside, it is common knowledge that there is always danger of explosion when fire comes near gasolene. The fact that

one did not take place here, does not prove the absence of that great danger. That danger of bodily injury and life would have been great had an explosion scattered gasolene over the clothing of the men goes without saying under the existing conditions of high winds, cold, absence of water or any means wherewith to put out a fire. The jury had a right to accept Thomas' testimony that he was, and had reason to be, afraid of his life or serious bodily hurt in attempting to put out the fire after its spread so that the flames got through the body of the car.

Error is also assigned upon the reception of Earl Thomas' testimony that fires do start from brakes, that such fires burn with intense heat, and the effect of heat applied to gasolene confined in the tank. Earl Thomas was the foreman in the garage of the Automotive Company and had years of experience as a garage mechanic. The objection interposed was that no foundation had been laid for his testimony. The determination of the trial court as to when a sufficient foundation has been laid is rarely disturbed. And it should not be here, for there was no effort at all to dispute the opinion given by Earl Thomas. Moreover, defendant's witnesses corroborated Earl in some things and common knowledge does as to the rest.

The last proposition is that the verdict is excessive. On January 5, 1922, the policy was issued, defendant fixing the insurable value on the car at $1,000. It was purchased in 1921 at a price to the dealer of about $1,300. During 1921 it was not used, only placed in the show window of the dealer. In 1922 it had been operated for demonstrating purposes less than 1,000 miles, when it burned in October of that year. Defendant received the full premium on the insurable value for the full year and should not be heard to complain, unless it is made to appear that the salvage, or what with reasonable efforts to protect could have been the salvage, should reduce the damage sustained below the insurable value fixed in the policy. We think the evidence was such that the jury could find the car before the fire exceeded in value the sum of $1,000, the amount of the verdict, and that such excess was more than the value of the salvage which the insured by proper effort to secure and protect did obtain.

The order is affirmed.